Here to give you this honorable appellate court, the second judicial district is now open. The Honorable Christopher M. Kennedy presiding. Good morning everyone, please be seated. Your Honor, the first case on the docket still in dispute at 24-0537, people of the state of Illinois, plaintiffs, please meet James W. Turner, defendant. Arguing on behalf of the attorney, Mr. Jeff Stone. Arguing on behalf of the appellate, Ms. Lee, and Howard. All right, good morning counsel. Mr. Stone, you may begin when ready. Please feel free to adjust the microphone as needed. Same goes for you, Ms. Howard. May it please the court, my name is Jeff Stone, I represent James Turuc, the appellant. The indictment in this case clearly instructed that the defendant would have to be proven beyond a reasonable doubt that he knowingly failed to notify the sheriff's office of the establishment of a phone number. The method of taking information from sex offenders in registration in McHenry County was to be interviewed by a staff member, not a police officer or a deputy, and in this case that staff member was Brittany Horosho. She was the staff member who interviewed Mr. Turuc, who took his information and put it onto a form that the state uses for registration of sex offenders. Mr. Turuc... But she never testified, right? She did not, and that of course is the crux of the failure of the state to prove its case beyond a reasonable doubt. Mr. Turuc testified, and he told the court under oath that he gave that phone number to Ms. Horosho, gave it to her, and told her that he had acquired a new cell phone. The state's key witness in this case was a Sergeant Vorkasi, who on cross-examination told the court also under oath that he was not present when Ms. Horosho interviewed and took information from James Turuc. That's significant, because he is not the witness who took that information. She was, and he didn't know, this is almost a quote from his testimony, he didn't know the specifics of James' disclosures to the staff member. The state has a duty to overcome a presumption of innocence. The state has a duty to call witnesses to prove the elements of their case. And in this case, those elements are that he knowingly failed to notify the Sheriff's Office of the establishment of a new telephone number. Later in time, a detective by the name of... Am I correct in thinking that what you just said was that the state has the obligation to prove that he didn't do something? Yes. How do you prove a negative fact, especially beyond reading about it? You put on the witness who did the interview, Ms. Horosho, and you ask her, did he give you a phone number? That's how you prove that someone didn't do something. You can't prove that someone didn't do something by not calling that witness and by putting on a police officer who says, I didn't know the specifics of James' disclosures. That's the lack of burden of proof beyond a reasonable doubt. It's almost classically the lack of the failure to prove the case beyond a reasonable doubt. It's not uncommon in criminal prosecutions for someone to... for the state to allege that the defendant failed to do something. That's not uncommon. And they have to prove it beyond a reasonable doubt. Sometimes by direct evidence, asking the witness clerk, did he do this? Sometimes by circumstantial evidence, but always has to be proven, and in this case, proven to have been done knowingly. Now, the state says that the question is not, did the defendant knowingly fail to notify the sheriff's office of the phone number? The state suggests that this is a strict liability case. That is incorrect. The indictment clearly, and the indictment is in our appendix to the brief, the indictment clearly says, the grand jury charges that honor about June 29, 2022, in McHenry County, state of Illinois, James W. Turek, the defendant, committed the offense of unlawful failure to register as a sex offender, in that the said defendant, a sex offender required to register in accordance with the Sex Offender Registration Act, knowingly failed to notify the McHenry Sheriff's Office, McHenry County, Illinois, of establishing a telephone number within three days of establishing said number, and said telephone number ended in 7361, in violation of chapter 730, section 150 slash 6 of the Illinois complied statutes, a class 3 felony. An indictment must notify the accused of the exact charges that he's facing, and then prove beyond a reasonable doubt that he did what was charged. The court, the state and the court relied on a case, People v. Molnar. Molnar is an interesting case because it clearly says that for a class 4 felony, the legislature made that an absolute liability, but for class 3 felonies, the statute says that the mental state, mens rea, is knowingly. That's what Molnar says, and both the trial prosecutor and the judge, and sadly the appellate prosecutor in this case, rely on Molnar to say it's an absolute liability crime. They're mistaken, and the Supreme Court was clear about that. We quoted from the Supreme Court in the Molnar case in our brief. I don't need to reiterate that now, but this is a case of knowingly. The judge was wrong, the prosecutor was wrong, and that error is repeated in the People's brief to this court. There's a subject of burden shifting also in this case. Counsel, just before you leave that topic, in Molnar, that was class 4. It was not charged as knowingly, right? That's correct. Now, if this case had been charged as a class 4 without the knowingly in the indictment, essentially that would be placing it under that first clause of section 10A. I think that's possibly true, but that's not how it is. Because the way it was charged, it's in the second clause, which is knowingly or willful. Respectfully, remember how I began my argument this morning. The indictment gave notice to the defendant of what the state had to prove beyond a reasonable doubt. They chose to charge him with a class 3 felony. He didn't choose to be charged with a class 3 felony. Once they did that, they had an obligation to prove the elements of that offense beyond a reasonable doubt. Those elements include the mens rea of knowingly. Of course, if he'd been charged with another crime, they would have to prove other elements. He would have been charged differently as to the offense as well. Right. And we lived and died by the indictment that was levied on him. Thank you for that question. First of all, in this subject of burden shifting, the state has said in its opening brief, in this case, that that was waived because it was never raised to the post-trial motion. Of course, at paragraph 27 of the post-trial motion, which is found in the common law record, paragraph 27 of the post-trial motion says, The court in its ruling committed error when it shifted the burden of proof from the state to the defendant, stating, quote, quoting the court, It is clear to me that Mr. Turek had a burden to do these things. He blames Brittany, but it's not Brittany's signature on the exhibit number two. It's Mr. Turek's. After he looked at it, then signed it, and this was after any conversation with Brittany, finding him guilty, close quote. That's a clear burden shifting statement. Did you raise it in the post-trial motion? And did you make an objection at the trial? I made an objection at trial. Which was overruled. And it was overruled. And in paragraph 27 of the post-trial motion, I preserved that issue for appellate review. I think that it was not waived. It was preserved. And the post-trial motion at paragraph 27 answers that question. Why do I think it was burden shifting? It was burden shifting because the state asked Mr. Turek to admit or deny that he told Detective Field that he had registered with Brittany. Field never asked him that question, nor did the other detective in the case. So it isn't as if he gave a false answer or refused to answer. Even the refusal of answering would be constitutionally protected, I believe. But he's now been prosecuted and prosecuted as a train. Prosecuted and convicted because a question was asked, well, didn't you tell the officer? It's not our job to provide evidence of guilt. It's our job to make sure that the state proves its case beyond a reasonable doubt. And I believe, getting back to Judge McLaren's question, the only way they could have done that was by calling Brittany, who was the person who had the conversation and took the information from Mr. Turek. Turek clearly testified that he gave that phone number to Brittany. There's no evidence to the contrary of that. And while I agree that when a defendant takes the witness stand, his credibility is at issue, and the judge could find him not credible. I don't think that Turek was not credible. I think he testified credibly. I think he's a nervous little man, but I don't think he was lying under oath. But that's not the issue. This issue isn't a question of credibility. It's a question of attempting to shift the burden of proof from the people and lay it on the defendant, not because he said something or did something, but because he didn't allegedly say something. And that is burden shifting. With that, if you have any questions, I'd be happy to answer, but I'd cede the rest of my time. Counsel, it seems to me that you are mixing the idea that when the state asks the defendant to testify either in an affirmative or a negative manner, that dependent on what the nature of the answer is, it will or will not prove the state's case. But that isn't the same thing as shifting the burden, because if he had said, I didn't do it, it isn't establishing the state's burden because of his statement. It's establishing the burden because it's establishing evidence of guilt. And so I'm having some qualms about attempting to understand the distinction or the nuance that you are presenting us by claiming that eliciting evidence orally from a defendant is necessarily, if so facto, changing the burden. I'm sorry if you think that's what I said. No, I'm saying that's what it seems like I'm interpreting what you said. That's my fault for not being clear enough, Judge. The question was, did you ever tell the detective that you had told Brittany that you had registered? That's the question. That question shifts the burden from the people to prove that he didn't tell Brittany to a question that leaves the possibility that he didn't tell Brittany. He says he told Brittany. He's really clear on that. And that's the crux of what the state has to prove. He didn't have to tell the detective. And we don't know whether he did or didn't tell the detective. The question raises an inference that the State can prove its case beyond a reasonable doubt by saying, well, he didn't tell the detective. And I think that is burden shifting. It may raise an inference if the answer raises the inference. But the question doesn't necessarily raise the inference. And it's the question I think we're supposed to be analyzing to determine whether or not the burden was shifted. I think the way the judge interpreted that question when he said, your whole defense here, I'm paraphrasing, your whole defense here is it's Brittany's fault. I know it's Brittany's fault were the exact words of the judge. And we're not saying it's Brittany's fault. We're saying it's the State's failure to put Brittany on the witness stand to testify as to what Turek told her and whether or not he gave her a phone number. Nobody else other than Turek and Brittany can testify to that. But there was a form that Brittany wrote the numbers that he had given, correct? Well, there is a form that she was supposed to write down what he had told her. And our position is that form was incorrectly filled out. That's a Brittany issue, not a Turek issue. He didn't fill out that form. And I'm sorry to harp on the old song, but he's presumed innocent. And the State has the burden of proof beyond a reasonable doubt. My time is up. And I thank you again for that question. Any further questions? All right. Thank you, counsel. You will have time on rebuttal. Thank you. Ms. Harrington, when you are ready. While it is still fresh in my mind, would you respond to his arguments, please? Yes, Your Honor. I actually planned on doing that immediately. Thank you. Good morning, Your Honors. Counsel. May it please the Court. My name is Lynn Harrington, and I represent the people of the State of Illinois. With regard to Mr. Stone's argument, the second argument that he brought up in his brief, I want to make absolutely clear that that claim was forfeited. In his brief, specifically on page 14, he says what the issue is. He says, when cross-examining Mr. Turk during the defense's case in chief, the State asked him if he ever told Detective Fields that he provided his number to Brittany Kurocha. However, and he did object, it was overruled, in his post-trial motion that he pointed to, paragraph 37, he's arguing that the trial court shifted the burden, and he specifically uses that finding. It's clear to me that the defendant had a burden to do these things, and obviously he takes issue with that, but of course the trial court was talking about is that the defendant has a responsibility to register as a sex offender pursuant to the act. That wasn't burden shifting. Nevertheless, he didn't even bring that issue up on appeal. On appeal, he's going back to the question on cross-examination, which he did not preserve. It's forfeited, and he didn't argue plain error, even in his opening or in his reply brief. However, Your Honors, I'm happy to answer that question and explain that the trial court absolutely did not err. First of all, on direct, defendant specifically testified that in May 2021, he went in to the McHenry County Sheriff's Office, and he gave Brittany 100 bucks and information on his cell phone, and he said, oh, Brittany said she was going to append that to my initial registration. That was his testimony. So the people were absolutely in their right on cross-examination to ask him about that information and say, hey, you said you went in and registered in May of 2021. When you talked to Detective Fields, did you tell him that? The black letter law, Your Honor, that this is absolutely appropriate cross-examination. You can use the information that a witness gave on direct examination to discredit a witness, and that's exactly what the prosecution was doing here. In addition, the trial court said, I'm not going to take this as burden shifting. It was a bench trial. So here we have the trial court knows the law. He's presumed to know the law, and he specifically said, it's not burden shifting, and I'm not going to take it as such. For all those reasons, Your Honor, the trial court did not err in allowing the defense to cross-examine the defendant on this question. Turning to the first issue, Your Honor, the people who have absolutely proved defendant guilty beyond a reasonable doubt of violating the Sex Offender Registration Act under both Section 6 and Sections 3C, 2.5. First, we start out with, I'll call it SORA. I think a lot of people call it SORA. Under SORA, if you have never violated the act before, you only have to register annually. That's exactly what happened here. Defendant got out of prison. He immediately registered in April of 21. We've got that in People's Exhibit 6. So then he only had to register annually, and he did. He registered in April of 2022. However, the problem here is that defendant admitted that he had a cell phone as of May 5, 2021, that he did not, well, he admitted that he had a cell phone, but based on the registration information, we know that that information was not on the forms. We also know from Sgt. Rocasi that he never would have allowed a defendant to sign a form if he had said, oh, wait, I have more information to give you, but that wasn't on the form. So the trial court had Sgt. Rocasi's testimony. It had the defendant's testimony to the contrary, and it was a credibility issue of who was telling the truth here. So under Section 6, when he signed that SORA form in April of 2022, he was in violation of Section 6 of the act. Then on June 29, 2022, when Detective Fields went to his house to verify with him, he admitted he had a new cell phone, and of course he had to, because we also know that Detective Fields got the number from defendant's mom, called the defendant earlier. The defendant had called Detective Fields earlier, so everybody knew this cell phone number. And defense counsel tries to make much to do about the fact that defendant put one digit wrong in the verification letter. That is absolutely a red herring, Your Honors. That is not the basis of the violation. The basis of the violation was that on June 29, 2022, a law enforcement officer said, hey, that's a new number, you've got to register it. And under Section 3C2.5, he had three days to do that, and we know he didn't. Not only did he not do it within three days, he never did it at all. Ms. Harrington, what do you make of Mr. Stone's argument that this is charged with the wrong burden? I'm sorry, charged with the wrong burden? It's charged incorrectly, is what he's saying. It's charged as knowing. Knowing. Yes, sorry, thank you. I have several responses to that. First, the defendant concedes in his brief that the indictment was proper and it gave him notice of the charges against him. So we have that. Second of all, it's also well settled that extra language in an indictment is surplusage. That you go by the actual wording of the statute. And when you look at Section 6, there's no mens rea. And we have an Illinois Supreme Court case on point that goes through SOAR, which has many different sections. Some mens rea, some not mens rea, but it's a perfect case because what it does is it talks about Section 10. And Section 10 has two different sections. And one is that you failed to give us your new address. Very similar to you failed to give us your cell phone number. The other section was you knowingly and willfully gave us false information. So the Supreme Court says we don't need to address that because we got the mens rea. We're going to go through the other one. And it came out and said SOAR, the purpose of SOAR is strict liability. Specifically, it cited to a New York Supreme Court case Patterson. And it says, this is a great quote. It says, SOAR is not a traditional criminal statute aimed primarily at punishing wrongdoing. Rather, SOAR is in essence a regulatory statute. It proceeds from a legislative finding that convicted sex offenders exhibit heightened rates of recidivism. And that sex offenders therefore present a special danger to the public. And in particular, to vulnerable women and children. SOAR is thus primarily intended as a measure to foster public safety. So we know for sure that it's a strict liability statute. However, as the people argue in their brief, it really doesn't matter. Because the prosecution proved knowledge below. In addition to that, Detective Fields testified that he told the defendant to register. Detective Fields also testified that the defendant did not tell him that he reported to the sheriff's office. In addition, the defendant himself said that I registered in May 2021. The trial could make a reasonable inference, Your Honors, that obviously he knew he had to register. Because he's trying to get out of this. And he's saying, oh no, no, no, I went in with $100 and this cell phone in May 21. And I told Brittany and obviously Brittany didn't do it. That was his argument, Your Honors. It's a credibility determination. The state proved knowingly, even though it didn't have to prove knowingly. Would you say that again, please? The state proved that the defendant knowingly violated SOAR, even though it did not have to prove knowingly. So the inference being the passage of time, is that what you're – so the fact that he got the cell phone in May of 21? The fact that he admitted – well, admitted – the fact that he testified, oh no, no, I went in and I registered, allows the trial court to make a reasonable inference that he knew he had to register. Even if the trial court found that that was not true. And based on the overwhelming evidence by law enforcement, Detective Fields, Sergeant Rowe Casey, the trial court could and did properly find the defendant not to be credible. And that there was no registration in May of 2021. And he didn't tell Detective Fields in June of 2022. He just said he'd had it for almost a year and he gave it to his parole officer. Let me ask, what is the process in McHenry County? In terms of – so counsel for the defendant has said that it's customary to report to, in this case, Ms. Hiroshi. Right. And so explain what the protocol is. Truly, Your Honors, again, this is another red herring that the defendant would like us to take as a serious issue when it's not. The secretary, the receptionist here, just had administrative duties. That's it. She wasn't in charge of reading the form to a defendant. She wasn't in charge of having the defendant initial that he understood the statute. She certainly would – she only was a collector of data. That's it. Did she have a role in preparation of the form? I believe she – yes, I believe she did have a role in preparation of the form. However, once that went to Sgt. Rokasi, that's where SORA kicks in. And Sgt. Rokasi went through all the requirements of SORA, said, hey, I just want to make sure. Do you – have you completely given me all the information? Sgt. Rokasi specifically testified if a defendant came to me and said, oh, I gave Brittany my phone number but it's not in there, he never would have let the defendant – that defendant sign the form. That's the information. That's the evidence that was before the trial court. So we've got defendant violating on Section 6 for not giving that information in April of 2022. And we've got him for violating Section 3C2.5 for not giving that information within three days in June of 2022 when he told Detective Fields that he had a cell phone number. Based upon the negative fact, which was there wasn't any indication of a change, does that then make the claim that the failure to give evidence to the Secretary was immaterial? If I'm understanding your question correctly, Your Honor, is it – Does it stand alone? No. And does it make irrelevant or immaterial what she did if, in fact, the basis for liability is based upon the fact that someone else has testified that I wouldn't have let it go on beyond this if what he is saying is true? Absolutely, Your Honor. That's correct. The buck stopped with defendant. And that's what the trial court was saying. You know, the devil's in the details here. You say it's Brittany's fault, it's Brittany's fault. It's not Brittany's fault. You, the sex offender, you had a duty to report. You had a duty to make sure that that form that you signed and that you initialed was exactly accurate. So this whole Brittany didn't testify, complete blood hearing. Brittany could not have added anything to that prosecution. We have the law enforcement officer pursuant to SOAR who is in charge of registering defendant. Defendant himself testified. We had Detective Fields, the verification law enforcement officer, testified. All of the information was allowed the trial court to find beyond a reasonable doubt the defendant was guilty of violating SOAR and both these grounds. If Your Honors have no more questions, I can conclude. Are there questions? For all these reasons, Your Honor, would people respectfully request that this court affirm the trial court's order finding defendant guilty of violating the Sex Offender Registration Act? Thank you. Thank you, counsel. Mr. Stone, you may respond. Did the state prove beyond a reasonable doubt that James Turek knowingly failed to notify the sheriff's office of establishing a phone number? The answer is no. The state did not prove that. How did they not prove it? Well, they never – they specifically told the court that this was not a knowingly mens rea offense. So they never proved the mens rea. They disavowed that they had to. And that deprived Mr. Turek of a finding beyond a reasonable doubt. But I think more importantly, the state claims this is a credibility case. How do you establish credibility without resolving what Brittany Hirosha took from the defendant? So she took this from the defendant and then a police officer sat down with him and went over this? Is that correct? No. She took the information down. She was to record it on the form. Right. The defendant didn't record anything on the form. And then the police officer asked him to sign it. And he did. So didn't he have an opportunity to look at it before he signed it to ensure that the information he gave was true? I described – yes, I didn't mean to cut you off. I described to you that James Turek is a nervous little man. He is. I don't know how well he read it before he signed it. He knew what he had given Brittany. He knew that he had told her the phone number. He signed the form, field testified that he was not present when James talked to Ms. Hiroshia, and he, quote, did not know the specifics of James' disclosures. That's what the state failed to do. Well, there are a lot of, to quote you, nervous little men when it comes to dealing with police officers. But is that a defense? No. It's not a defense. It's a factor that you all need to understand in determining whether or not the state proved its case of knowingly failing to give information of a phone number when the person to whom he gave that phone number was never called by the state. And it's demeaning to her for the state to stand up today and say, well, she's just a clerk. She's not just a clerk. She's a representative of the Sheriff's Office of McHenry County. He gave her the information. She wrote it down. She gave it to a police officer who sat down with him and had him sign it. So he never looked over the form to see if she did the right or the wrong thing. I think that's likely true. That doesn't mean he knowingly failed to notify the Sheriff's Office of establishing a phone number, which, by the way, is what he's charged with and what the judge erroneously found him guilty of beyond a reasonable doubt. So how would the testimony be any different had this woman testified? Because she would have testified, this is what he gave me. I gave it to the police officer. He had him sign it. Your client would have gone out and said, no, that's not the number I gave her. Didn't he do that at trial already? So where's the prejudice in not calling her? Well, she might well have told the truth. I presume she would have told the truth. I have no animus for this woman. I think she was given an important job to do in the Sheriff's Office. I presume she did it. And maybe she would say, you know, he did give me that number. I failed to put it on the form. I wonder how many people she registered as sex offenders over that period of time that she would have remembered that she would have taken down the wrong number and that he gave it to her. What's the likelihood of that? Not taken down the wrong number. Failed to take down this number. There were three numbers. There was a house phone that belonged to his mother. There was his mother's, I think, cell phone. And then there was the cell phone that he had just recently. The 7361. Right. And I don't mean to castigate the woman, but she erred. It was her mistake. And the only, if this is a credibility question, the only way to resolve that credibility question is to call her, put her under oath, have me cross-examine her, and then tell the judge that this is not a knowing act of failing to notify the Sheriff's Office of establishing a phone number, which, by the way, is the crime for which she's charged. A classroom felony with the mental state of knowingly. If you have any other questions, I'd be happy to.  The way I understand your argument, you're saying that the state had the burden to put her on the stand as opposed to your client to put her on the stand to ask her the same question that related to the fact that she didn't put down that which he told her to. I think that, yes, by the way, that is my position. A defendant never has to prove his innocence. The state has to prove him guilty beyond a reasonable doubt. Well, if that's, was he later on asked by the deputy or the detective to review the document to check and make sure that it was accurate, and he did so and indicated that it was accurate? I don't think that's the way it happened. I think that Brittany took the information. I'm calling her Brittany because I can't pronounce her last name. I'm not trying to demean her in any way. She took the information. Her job was to transfer the information she was given to the form. She then gave the form to the detective, who then sat down or stood up at a counter with Mr. Turek and said, this is your form, sign it. That's not knowingly failing to disclose anything. So did we have testimony that the police officer said, this is your form, sign it? Or are you just saying that? No, I think that's what Turek said happened. Well, that's what Turek said happened. Could you have subpoenaed Brittany? Yes. And I didn't. And that was a conscious choice. She was no longer working at the sheriff's office. We found her working for a school district in McHenry County. I considered subpoenaing her, but I didn't believe, don't believe now, think that I had the burden of proving his knowledge. You're Perry Mason and you don't get confessions from the stand? No, I don't. And in 50 years of trying criminal cases, that's never happened to me. And by the way, all of those Perry Mason stories were preliminary hearings in California. None of them were trials. Really? Thank you, gentlemen. Thank you, ma'am. Thank you very much, counsel. All right, we will take the matter under advisement, issue a disposition in due course, and we will adjourn until our next argument at 1030. All rise.